**J. F. COOLEY, Plaintiff,**

v.

**The BOARD OF EDUCATION OF the FORREST CITY SCHOOL DISTRICT, FORREST CITY, ARKANSAS; and William Irving, Superintendent of Schools of the Forrest City School District, Defendants.**

**No. H 69–C20.**

United States District Court, E. D. Arkansas, E. D.

April 27, 1971.

Philip E. Kaplan, Walker, Kaplan, Lavey & Mays, Little Rock, Ark., for plaintiff.

E. J. Butler, Butler & Hicky, Harold Sharpe, Forrest City, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, District Judge.

The plaintiff brings this action for declaratory judgment under provisions of 28 U.S.C.A. § 2201 to determine the legal rights and relationship of and between the parties.

The plaintiff also seeks mandatory injunctive relief against the defendants requiring his being reinstated as a teacher in the public school system of Forrest City, Arkansas. Further, plaintiff seeks compensation for loss of earnings and expenses allegedly incurred as a result of his being terminated as a teacher in the Forrest City public schools and reasonable attorney's fee.

Jurisdiction is established under the provisions of 28 U.S.C.A. § 1343(3), (4); 42 U.S.C.A. §§ 1981 and 1983; and the Fourteenth Amendment to the Constitution of the United States.

The plaintiff was first employed in the Forrest City public schools in 1957. For more than eleven years he was a teacher in Social Studies in the Lincoln Junior High School. The plaintiff is also by profession a minister and became a resident of Forrest City as a minister of a local church. He continued as pastor of the church when he accepted the position as a full-time teacher at Lincoln Junior High School.[1]

He became active among his own people and in the community through various groups and organizations such as black teenage groups and served as probation officer under the supervision of the Circuit Court of St. Francis County, Arkansas, and in a more limited way with the County Judge of the county. It is well established that he became quite active in the community as a civil rights proponent. It is quite apparent that he was influential in his church and the black people of the community.

In March, 1969, his contract as a teacher was terminated by action of the

---

1. At the time he became a teacher in 1957 Lincoln Junior High School was an all-black school. The school district adopted freedom of choice in a limited program of integration in 1965. Under district court mandate and order the district adopted a fully integrated, nonracial unitary system in 1969.

school board on the recommendation of the school superintendent on the basis of failure to co-operate; fostering of organizations in classroom sponsored by outside adult persons and agencies; refusing to comply with requirements of the superintendent of schools, rules, regulations and guidelines of the school; accusations against the superintendent and certain of the black community; threats; intimidation; and insubordination, which gives rise to this action.

A motion for summary judgment, with supporting brief, was filed by the plaintiff on October 2, 1970. Defendants filed response with supporting brief. The matter was duly scheduled for hearing on October 20, 1970. In the interim, plaintiff filed an amendment to the complaint. Following the hearing on the motion for summary judgment, the Court denied the motion, granted leave for the plaintiff to amend the complaint, and proceeded to hear the case on its merits which continued through Wednesday, October 21, 1970. At the conclusion of the hearing the matter having been submitted, was taken under advisement.

From the pleadings, response to interrogatories, ore tenus testimony, exhibits and briefs, the Court concludes that the primary questions for the Court's determination is:

1. Was the termination of the plaintiff by the school board the result of the plaintiff's activity as a civil rights proponent and his continued activity outside the classroom in the civil rights field among his own people and in the community, or

2. Was his termination the result of his failure to co-operate and comply with the rules, regulations and guidelines of the policies of the school administered by the superintendent and a deliberate intent to create disturbances in the school while in regular classroom teaching and engaged in conduct considered as such to be detrimental to the school and by such action willfully and deliberately defied

the administration of the school in its orderly process?

■ If, from the record and testimony, his discharge was a result of his own public expression of views and civil rights advocacy, the relief sought by him has merit and should be granted. Pickering v. Board of Education, 391 U. S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811; Johnson v. Branch, 4 Cir., 364 F.2d 177; McBeth v. Board of Education of De-Valls Bluff School Dist. No. 1, Ark., D. C., 300 F.Supp. 1270.

■ On the other hand, if the plaintiff's demeanor while engaged in his duties as a classroom teacher was such as to frustrate the orderly operation of the school and his failure to co-operate and comply with established rules and regulations, together with his defiance of the administration resulted in his termination, his complaint is without merit and should be dismissed. Adler v. Board of Education, 342 U.S. 485, 492–493, 72 S. Ct. 380, 96 L.Ed. 517; Beilan v. Board of Education, 357 U.S. 399, 406–408, 78 S.Ct. 1317, 2 L.Ed.2d 1414; Shelton v. Tucker, 364 U.S. 479, 485, 81 S.Ct. 247, 5 L.Ed.2d 231; Pickering v. Board of Education, supra, 391 U.S. at p. 572, 88 S.Ct. 1731; McBeth v. Board of Education, supra, 300 F.Supp. at p. 1274.

In Johnson v. Branch (1966), 364 F. 2d 177, at page 181, the court stated:

"While there is some ambiguity in the court's findings and conclusions, we think it a fair summary to say that the court found that the plaintiff's civil rights activities consumed so much of her time and interest that they interfered with her 'extracurricular' activities at the school; created some dissension between her and the Principal, and caused the Board's refusal to renew her contract. This independent finding of the court is irrelevant because it is not the reason advanced by the Board members for refusing to execute her contract. *The statute gives discretion to the school board in deciding whether or not to*

*continue the employment of a teacher. Discretion means the exercise of judgment, not bias or capriciousness. Thus, it must be based upon fact and supported by reasoned analysis. In testing the decision of the school board the district court must consider only the facts and logic relied upon by the board itself. It is 'a simple but fundamental rule of administrative law \* \* \* that a reviewing court, in dealing with a determination of judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside for the administrative agency.' (Citing cases) Similarly the district court may not usurp the discretionary power of the school board but must judge the constitutionality of its action on the basis of the facts which were before the Board and on its logic."* [2]

As in this case, the above cited *Johnson* case involved the demeanor and actions of a teacher such as to interfere with the school work in an atmosphere of noncompliance, defiance of rules and regulations and to some extent controversy within the black community. To distinguish between these two most important and highly sensitive legal concepts, requires an exceptionally close scrutiny of the facts in the case.

Briefly, the facts disclose without question that the plaintiff became a resident of Forrest City when he moved there as pastor of the church, which he continues to pastor until this day. He became well known and influential in the community. As such he was sought as a teacher in the then black school. He taught in the school for more than eleven years. For a period of two years prior to his termination there was continuous difficulty with the superintendent and the school board. His termination, therefore, was not sudden, but gradually developed over the period with these difficulties.

While it is established that he was a civil rights activist, the facts reveal that the activity was not limited to his statements, conferences and activities in his church and outside of the school, but it became a part and parcel of his activity in the classroom and on the school grounds. This makes the issue more difficult to distinguish between the plaintiff's constitutional safeguards and the school board's legal right to require co-operation and compliance with the rules and regulations of the school in an orderly fashion.

In the meantime, the plaintiff's part-time work with the County Judge was terminated. Prior to the action of the school board, his employment as a probation officer by the state court was terminated. One of the difficulties between the plaintiff and superintendent of schools was the plaintiff's insistence on wearing the probation officer's badge while in the classroom and on the school campus. The superintendent insisted that he leave off his badge of authority and wear it in a different area.

During the period of two years or more, the facts reveal that he and the superintendent of schools had numerous conferences. The superintendent of schools insisted that he comply with their rules with reference to activities in the classroom and on the campus. Even though the testimony is in conflict, the Court credits the witnesses and finds that the plaintiff continued to conduct organizational meetings in the classroom with outside adult citizens and representatives of agencies contrary to the regulations and continued warnings of the superintendent, which interfered continuously with the classroom activity

2. Emphasis supplied.

and culminated in frustration in the classroom and on the school campus.

Finally, the plaintiff on February 14, 1969, directed a letter to the superintendent of schools in which he contended that for a period of *eight* years there had been differences resulting in the superintendent of schools calling him into his office some twenty times. Even though the letter purports to base the difficulties on his civil rights activity, it is obviously an admission of his differences in many fields, including mistreatment of his own people. In his determination he makes charges and threats and states to the superintendent that his type of services is not wanted by the superintendent and "certain Negroes". He frankly stated that he would take his "case to the federal government and the court." Obviously frustrated in his difficulties, he stated to the superintendent:

"In closing, there is no one I fear. I only wanted to help. I was not welcome. Therefore, when I am needed, I will *not* be available." (Emphasis supplied)

Furthermore, in a postscript, he states:

"I will not meet with you again on these matters unless my principal has been notified, and my accusers present."

Numerous witnesses testified to these facts which gave rise to this unfortunate, climatic incident. The Court can only conclude from the testimony that regardless of the plaintiff's determination in the field to which he is dedicated, there was no justification for him to carry such deep feeling to the classroom and to the point of defiance and insubordination while engaged in his official duties as a classroom teacher.

The Court concludes and finds that the defendant, The Board of Education of the Forrest City School District, for good cause shown terminated the contract of the plaintiff, J. F. Cooley, with the school district on March 19, 1969, as a result of official school board action, consummated in accordance with the laws of the State of Arkansas. The Court further finds that the numerous acts of the plaintiff, over a period of time in connection with the discharge of his official duties as a classroom teacher culminated in his written communication of the willful flaunting of authority and refusal to co-operate, and comply with reasonable requests of his superiors and employers. The Court further finds that the evidence fails to establish that the termination of the plaintiff's contract was on the basis of his race, civil rights activities, or expression of views on such issues.

▪ The Court further concludes that the termination of the plaintiff was due largely to his own demeanor and actions and not as a result of infringements on the legal and constitutional rights by action of the defendant school board and its superintendent. It follows that the plaintiff, J. F. Cooley, is not entitled to reinstatement to the former teaching position in the Forrest City School system or to a similar or comparable position. The Court concludes that to require reinstatement would be detrimental to the regular and normal operation of the school system and usurp of the common ordinary rights of authority of the Board of Education of the defendant school district.

The Court further finds that the plaintiff has failed to establish that he has suffered loss of earnings and expenses as a result of his termination. The plaintiff obtained gainful employment at Shorter College in Little Rock, Arkansas, and where he is still employed, at a salary comparable to that he was receiving as a teacher in the Forrest City public schools.

From these findings and conclusions, the Court is of the opinion that since the plaintiff, J. F. Cooley, has failed to sustain the burden of proof of the allegations of his complaint, and that the action taken in terminating his services as a classroom teacher was not based on

racial considerations, the complaint is without merit and should be dismissed.

The Court includes with this opinion findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

An order will be entered accordingly.